# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 7, 2004

## STATE OF TENNESSEE v. CHRISTOPHER DEMOTTO LINSEY

### Direct Appeal from the Circuit Court for Montgomery County
### Case No. 40200695    John H. Gasaway, III, Judge

_____

### No. M2004-00128-CCA-R3-CD - Filed March 8, 2005

_____

A Montgomery County jury convicted the Defendant, Christopher Demotto Linsey, of one count of possession of more than .5 grams of cocaine with the intent to sell, one count of possession of more than half an ounce of marijuana with the intent to sell, and one count of possession of an altered serial number item. The trial court sentenced the Defendant to an effective sentence of fourteen years in prison. The Defendant appeals, contending: (1) the evidence presented at trial is insufficient to sustain his conviction for possession of cocaine; and (2) the trial court erred when it sentenced him. After thoroughly reviewing the record and applicable authorities, we affirm the trial court's judgments.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined, and THOMAS T. WOODALL, J., concurred in result only.

Collier W. Goodlett, Clarksville, Tennessee, for the Appellant, Christopher Demotto Linsey.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION
### I. Facts

The charges in this case arise from evidence obtained during the execution of a search warrant on November 6, 2002. A Montgomery County Grand Jury indicted the Defendant on two counts of possession of cocaine, a Class B felony, two counts of possession of marijuana, a Class E felony, and possession of a car stereo with an altered serial number, a Class A misdemeanor.

At the Defendant's trial for these offenses, Frederick McClintock, III, an officer with the Clarksville Police Department's major crimes unit, testified that he sought and obtained a search

warrant for 205 Charlemayne Boulevard that he and other officers executed on November 6, 2002, at 8 a.m. He said that, when he executed the warrant, the Defendant was present in the house as were Rebecka Beals and two small children. The officer testified that the house had three bedrooms and, in a dresser in the master bedroom, he found two small bags that he suspected contained marijuana and a set of "swing" scales, which were generally used to weigh bags of marijuana. In the master bedroom, Officer McClintock also found four small clear plastic bags that contained a white powdery substance that he suspected was cocaine. Officer McClintock testified that the bags were "corner bags," meaning that the cocaine was pressed into the bottom corner of the sandwich bag, the bag was tied in a knot, and the excess bag was cut off and discarded. The officer said that this was a common method of packaging cocaine for resale. The officer also found a box of cigars that, in his experience, are used to assist in smoking marijuana, and he found a gray bag that contained ten clear plastic bags filled with marijuana. The officer said that these bags appeared to be fashioned for resale. The officer testified he found three hundred and eighty dollars hidden behind a Titans jersey that was hanging on the wall of the master bedroom.

The officer testified that in the kitchen, on top of the refrigerator, he found a set of digital scales and a box of sandwich bags. In the officer's experience, digital scales were used to weigh cocaine. In the kitchen, the officer also found discarded portions of the "corner bags" in the trash can, which indicated to the officer that the occupants of the house had been selling drugs by packaging them in sandwich bags. In the same trash can, the officer found cigar materials and a razor blade, which could be used to cut the cigar wrapper or the corners off of the sandwich bags or to measure an exact amount of cocaine. The officer found some marijuana in the living room on top of the entertainment center and a white powdery substance on top of a dresser in the second bedroom. Officer McClintock used a card to get some of this substance off of the dresser and into an envelope for testing. On this dresser, the officer also found a digital scale and a box of sandwich bags. In one of the dresser drawers, the officer found some loose ammunition, for three different caliber guns. The officer said that he also found underneath the bed a plate on which there was cocaine residue.

The officer testified that, in the master bedroom, he also found a car stereo that had the serial number scratched off. The officer said that this caused him to think that this item had been altered, and he would be unable to track it as a stolen item. The officer also found dogs and male clothing at the searched address.

Officer McClintock testified that the Defendant gave a statement to police in which he admitted that he lived at the searched address. The Defndant told police that he had some clothes at this address and also three dogs. The Defendant denied that he owned any of the drugs found at the address, and he said that he was aware that there were some drugs there "about two months ago." The Defendant told police that Rebecka Beals, the owner of the house, used to smoke marijuana everyday, but she did not sell marijuana. The Defendant denied that he

currently sold marijuana or cocaine, and he admitted that he sold cocaine a "couple of years ago." The Defendant said that he did not know how long he lived with Beals, and he did not know the last time that he used cocaine. He said that he never saw Beals use cocaine. The Defendant said that he knew what marijuana looked and smelled like, and he said that, while he slept in the master bedroom, he did not see or smell any marijuana.

On cross-examination, the officer said that Beals, who owns the searched house, was found in the house when the search warrant was executed. He said that the scales that he found have uses other than to weigh drugs. The officer admitted that some items on the dressers had to be moved in order to see and photograph the drugs. Officer McCormick testified that the cocaine residue that he scraped from the dresser and the plate found under the bed were both placed in the same envelope prior to testing. The officer testified that the razor blade that he found can be legitimately purchased and owned, and it has uses other than in the drug trade. The officer indicated that sandwich bags can be used for other purposes, and he said that he found the sandwich bags near some chips and children's medicine.

Glenn Everett, a forensic scientist with the Tennessee Bureau of Investigation ("TBI"), testified that he tested the evidence in this case. These tests proved that the evidence in the small clear plastic bags, that were found in a large gray bag, was marijuana. He said that the marijuana weighed 486.6 grams, which is a little over one pound. The agent said that he tested another bag of evidence, and he determined that it was marijuana that weighed 64.6 grams. Agent Everett also tested the white powdery substance that was found during the search, and he determined that it was cocaine. The agent said that the cocaine weighed .6 grams. On cross-examination, the agent testified that the white powdery substance weighed .6 grams and it tested positive for cocaine, but he could not be sure what percentage of the substance was actually cocaine.

Rebecka Beals testified that, in November of 2002, she owned the house that was searched. She said that, at that time, other people were living with her, including: her boyfriend, the Defendant; her two year old son; her roommate, Jenny Black; her roommate's boyfriend, Tony; and her roommate's three year old son. Beals testified that the Defendant had been staying with her for approximately four months prior to the search. She said that she was selling marijuana out of her home during that time, and she had sold marijuana from the home within a week before the search. Beals testified that the Defendant sold cocaine and marijuana from the house.[1] She did not remember the date of the last time that the Defendant sold marijuana or cocaine from the house before the search warrant was executed. Beals testified that she could

---

[1]In light of the Defendant's later argument, the following is the exact question and answer as it occurred during the Defendant's trial:

[Prosecutor]: Now, back in November, again – we are talking just before the search warrant. Was [the Defendant] selling cocaine or marijuana from your house?
[Beals]: Yes.

not count the number of times that the Defendant sold cocaine from her home. She said that the Defendant sold marijuana or cocaine, depending on "what people wanted." Beals said that she allowed the Defendant to sell drugs from her home because she was trying to help him "get back on his feet."

Beals testified that, around this time, she had a job working at a fast food restaurant. She said that she worked an average of forty-five hours a week, and the Defendant helped to supplement her income by giving her money. Beals said that she did not know where the drugs that she and the Defendant sold came from, the Defendant just brought them to the house. About the marijuana found in the home during the search, Beals testified that the Defendant gave her approximately two thousand dollars to give to a man who delivered two pounds of marijuana to her house. She said that some of the marijuana was sold or smoked before the police searched her house. Beals testified that the cocaine was not delivered to her home, but the Defendant would bring it into her house, and he would pay for the cocaine. She said that she has seen the Defendant bring an "eight ball" of cocaine, which is a quantity of cocaine in a small sphere, into her house, and they used that to fill the corner bags and sell the cocaine. She said that either she or the Defendant would cut the corners from the sandwich bags and would fill the corners with cocaine. Beals testified that the master bedroom was her bedroom, and the second bedroom belonged to her roommate. She said that the JVC car stereo that police found was given to the Defendant.

On cross-examination, Beals testified that she sold both cocaine and marijuana from her house. She said that he did not go into her roommate's bedroom, and her roommate frequently locked herself in the bedroom. Beals testified that she was not charged in this case. She admitted that, if she was charged and convicted, she would lose her child and her house. On redirect examination, Beals testified that she did not have a criminal history, and she was not charged because she had been honest about everything. She said that she told police what had been going on in her house on the day that they executed the search warrant.

Based upon this evidence, the jury convicted the Defendant of one count of possession of more than .5 grams of cocaine with the intent to sell, a Class B felony, one count of possession of more than half an ounce of marijuana with the intent to sell, a Class E felony, and one count of possession of an altered serial number item, a Class A misdemeanor. The trial court sentenced the Defendant, as a Range II offender, to concurrent sentences of: fourteen years in prison for the possession of cocaine with intent to sell conviction; three years in prison for the possession of marijuana with intent to sell conviction; and eleven months and twenty-nine days for the possession of an altered serial number item conviction.

## II. Analysis

On appeal the Defendant contends that the evidence is insufficient to sustain his conviction for possession of cocaine with the intent to sell[2] and that the trial court erred when it sentenced him.

### A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to sustain his conviction for possession of more than .5 grams of cocaine with the intent to sell because: (1) there was no proof that the cocaine weighed more than .5 grams; (2) he did not own the house that was searched; and (3) he did not actually or constructively possess the cocaine. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Carter, 121 S.W.3d 579, 588 (Tenn. 2003); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Under Tennessee Code Annotated section 39-17-417(a) (2003), "[i]t is an offense for a defendant to knowingly: . . . Possess a controlled substance with intent to manufacture, deliver or

---

[2]We note that the Defendant's brief states that the question presented for review is whether the evidence is sufficient to sustain any of his three convictions. He, however, only provides citations to the record and argument to support his contention that the evidence is insufficient to sustain his conviction for the possession of cocaine with the intent to resell it. Therefore, we will only address that issue.

sell such controlled substance." A person is guilty of possession with intent to sell or deliver cocaine, a Class B felony, "if the amount involved is point five (.5) grams or more of any substance containing cocaine." Tenn. Code Ann. § 39-17-417(c)(1). To be found guilty of possession with intent to sell cocaine, the State must prove that the drug was, in fact, cocaine. Tenn. Code Ann. § 39-17-408(b)(4) (2003). The State must also prove intent to sell the drugs to another, which can be proven through circumstantial evidence. Thus, in order to convict the Defendant, the State was required to show: (1) a knowing mental state; (2) possession of cocaine; (3) an intent to sell that cocaine; and (4) that the weight of the cocaine equaled or exceeded .5 grams. Tenn. Code Ann. § 39-17-417.

When viewed in a light most favorable to the State, the evidence unquestionably proved beyond a reasonable doubt that the substance found in the house was cocaine and that the weight of the cocaine exceeded .5 grams through TBI Agent Everett's testimony that the bags found in the home tested positive for cocaine, and they weighed .6 grams. Thus, the question is whether the Defendant knowingly possessed the cocaine with the intent to sell it.

"[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b). A conviction for possession of cocaine may be based upon either actual or constructive possession. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Before a person can be found to constructively possess a drug, it must appear that the person has the power and intention at any given time to exercise dominion and control over the drugs either directly or through others. State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App.1981). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. Cooper, 736 S.W.2d at 129. Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs. State v. Transou, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996). However, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App.1993). The circumstantial evidence must be not only consistent with the guilt of the accused, but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900. In addition, "'it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime.'" Id. (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)). Further, the trier of fact may infer from the amount of cocaine, along with relevant facts surrounding the arrest, that the cocaine was possessed for the purpose of selling it.

When viewed in the light most favorable to the State, the evidence at trial showed that the Defendant purchased large quantities of cocaine called "eight balls," and he divided the cocaine into smaller amounts that he placed in "corner bags" for resale. The Defendant sold these "corner bags" from Beals' home. The police, after executing a search warrant, found four of these "corner bags" in the room where the Defendant stayed at Beals' home. From this evidence, we conclude that a rational trier of fact could have found that the Defendant knowingly intended to sell that cocaine. Accordingly, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. This issue is without merit.

## B. Sentencing

The Defendant, relying on Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), contends that the trial court erred when it enhanced his sentence above the presumptive minimum. The State contends that the Defendant has waived this issue. Upon the Defendant's request, this Court ordered that the transcript of the sentencing hearing and the Defendant's presentence report, which was made an exhibit at the hearing, be made part of the record on appeal. The record reflects that the trial court found, and the parties agreed, that the Defendant was a Range II offender. Additionally, the trial court enhanced the Defendant's convictions based upon three enhancement factors. First, the trial court found that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(2) (2003). The trial court also found that the Defendant was a leader in the commission of an offense involving two or more criminal actors. See Tenn. Code Ann. § 40-35-114(3). Further, the trial court found that the Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. See Tenn. Code Ann. § 40-35-114(9). The trial court then found that one mitigating factor existed, that the Defendant's criminal conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1) (2003).

When a defendant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the

principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We note that the defendant bears the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; Ashby, 823 S.W.2d at 169.

In the case under submission, the Defendant was convicted of a Class B felony, a Class E felony, and a Class A misdemeanor. The sentence for a Range II offender convicted of a Class B felony is twelve to twenty years. Tenn. Code Ann. § 40-35-112(b)(2) (2003). The sentence for a Range II offender convicted of a Class E felony is two to four years. Tenn. Code Ann. § 40-35-112(b)(5). In both cases, the presumptive sentence is the minimum within that range. See Tenn. Code Ann. § 40-35-210(c). The sentence for an offender convicted of a Class A misdemeanor is not greater than eleven months and twenty-nine days. Tenn. Code Ann. § 40-35-111(e)(1) (2003).

The United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), calls into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. 124 S. Ct. at 2537. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 124 S. Ct. at 2537. Finally, the Court concluded that "every defendant has a *right* to insist that the prosecutor prove to a jury [beyond a reasonable doubt] all facts legally essential to the punishment." Id. at 2539. This Court has held that Blakely violations are subject to a Constitutional harmless error analysis. State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *24 (Tenn. Crim. App., at Nashville, Nov. 30, 2004). "While it is true that Blakely concerns the inviolate right to a jury trial, the cornerstone upon which our criminal justice system was constructed, we cannot say that

a jury's failure to determine an enhancement factor 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" Id. (quoting Needer v. United States, 527 U.S. 1, 9 (1999)). Thus, before we modify a defendant's sentence, we will "review the Blakely errors to determine whether they were harmless beyond a reasonable doubt." Id.; see Chapman v. California, 386 U.S. 18, 24 (1967).

We note that the United States Supreme Court's recent decision in Blakely has no impact on a trial court's sentencing determinations involving misdemeanor convictions. See State v. Jeffery D. Hostetter, No. M2003-02839-CCA-R3-CD, 2004 WL 3044895, at *8 (Tenn. Crim. App., at Nashville, Dec. 29, 2004), *no perm. app. filed.* Under Blakely, unless the defendant has a prior conviction, the "statutory maximum" sentence which may be imposed is the presumptive sentence applicable to his or her offense. Id. Unlike a defendant convicted of a felony the legislature has not extended a statutory presumptive sentence to misdemeanants. Tenn. Code Ann. §§ 40-35-111, -210; State v. Seaton, 914 S.W.2d 129, 133 (Tenn.Crim.App.1995). The sentencing scheme for misdemeanants establishes only a maximum sentence which may be imposed for a particular class of misdemeanor. Tenn. Code Ann. § 40- 35-111(e). Thus, a misdemeanor sentence, unlike a felony sentence, has no sentence range. Baker, 966 S.W.2d at 434. Accordingly, in the case under submission we conclude that Blakely does not affect the Defendant's sentence for his Class A misdemeanor conviction. We now turn to decide whether the trial court improperly sentenced the Defendant for his two felony convictions.

First, we note that the Defendant has not waived this issue. In Walters, we held that, because Blakely announced a new rule, any defendant whose case was still on direct appeal could raise this issue. Walters, 2004 WL 2726034, at *19. We explained that, although Blakely was the Supreme Court's explanation of its prior decision in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), the Tennessee Supreme Court had previously announced that the rule in Apprendi did not affect our State's sentencing scheme. As a result, the mandate of Blakely created a new rule in Tennessee. Furthermore, in Walters, this Court held that Blakely could be raised in all cases on direct appeal, because a violation of this mandate was plain error arising from the deprivation of the Constitutional right to a jury trial. See also State v. Charles Benson, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *7–10 (Tenn. Crim. App., at Nashville, Oct. 8, 2004).

The trial court enhanced the Defendant's sentence for his Class B felony by two years and his sentence for his Class E felony by one year. The trial court enhanced the Defendant's sentence based upon three enhancement factors: (1) that he has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) that he was a leader in the commission of an offense involving two or more criminal actors; and (3) that he has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. As stated above, Blakely does not apply to the enhancement factor involving the Defendant's previous history of criminal convictions. As to

–9–

the second enhancement factor used by the trial court, that the Defendant was a leader in the commission of the offense, we conclude that this factor was not admitted by the Defendant or found by a jury, and it is subject to a <u>Blakely</u> analysis. Therefore, the trial court's application of this enhancement factor was error, and we have concluded that the error was not harmless beyond a reasonable doubt.

Finally, as to the third enhancement factor found by the court, that the Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, we conclude that this factor was not admitted by the Defendant or found by a jury. Furthermore, as it is subject to <u>Blakely</u>, we conclude that the trial court erred when it applied this enhancement factor. This error, however, was harmless beyond a reasonable doubt. The Defendant's presentence report, which was admitted as an exhibit without objection during the sentencing hearing, indicates that the Defendant has had his sentence to community corrections revoked on two occasions. The Defendant was convicted of theft of property and aggravated burglary on October 2, 1997. He was sentenced to three years in community corrections, and his sentence was later revoked, and he was ordered to serve the sentence in prison. The Defendant was also convicted of aggravated robbery on August 19, 1999, and sentenced to eight years in community corrections. His sentence was later revoked, and he was ordered to serve the sentence in prison. Accordingly, we conclude that the trial court's application of this factor was harmless beyond a reasonable doubt.

The trial court properly applied one enhancement factor and the application of another enhancement factor was harmless, and, therefore, we conclude that the Defendant's sentence need not be modified. This issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

−10−